A07A0282. ROWLAND v. SCARBOROUGH FARMS, LLC.
(648 SE2d 151)

MIKELL, Judge.

In this suit for breach of contract arising from an oral agreement for the sale of a horse, Joel B. Rowland d/b/a J & B Farms ("Rowland") appeals from the trial court's grant of summary judgment to Scarborough Farms, LLC ("Scarborough"), arguing that issues of fact remain as to whether payment was timely and whether Scarborough was entitled to cancel the contract. For the reasons set forth below, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the

---

[7] (Footnote omitted.) *Griffin Indus. v. Green,* 280 Ga. App. 858, 860 (1) (635 SE2d 231) (2006).

[8] See id.

[9] See *Toole,* supra at 372, n. 1.

evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record reflects that in early March 2003, Rowland contacted Gary Edwards, a horse trainer doing business as Carl Edwards and Sons Stables, about helping Rowland purchase and train several horses. Edwards advised Rowland to attend a colt preview on March 8, 2003, in Decatur, Alabama, at which time Rowland expressed an interest in purchasing a colt owned by Scarborough named Image of Ritz. It is undisputed that Edwards represented both Rowland and Scarborough, and that at a trainer show on March 21, 2003, Rowland and Bruce Jones, Scarborough's president, entered into an oral agreement for the sale of Image of Ritz to Rowland for $35,000. Rowland told Edwards that he could not complete the purchase at that time because he had brought the wrong checkbook and that he needed "a few days to, you know, get my money transferred and . . . get [the money] to [Jones]." According to Edwards, Rowland said, "tell [Jones] that he'll have his money. He'll have his money. Not going to mail it, he'll have his money in three days. Four days tops." Rowland disputes Edwards' testimony, claiming that he never attached a specific number to "a few days." At the time, Jones had another offer for $50,000, but decided to keep his word to Rowland on the condition that Rowland mail a check for $35,000 in "three days, four days tops." Edwards deposed that sometime that day, or the following day, his wife gave Rowland Scarborough's mailing address, a fact Rowland disputes.

On March 31, 2003, Jones called Edwards to ask about payment. According to Jones, Edwards advised him that he would have a check "no later than" April 2, 2003. When asked if he gave Jones a deadline of April 2, 2003, Edwards deposed that, "No, sir. I — I don't guess I did." Edwards claims he then called Rowland and told him he had to pay or he was going to lose the colt. Jones called Edwards again on April 2, 2003, and advised him that Rowland had had ample time to pay for the colt and that the sale was off. According to Edwards, he called Rowland that same day and told him he had "lost all the rights to the colt." According to Rowland, Edwards contacted him for the first time on April 2, 2003, after the post office had closed, told him that Scarborough wanted its money and gave him Scarborough's mailing address. Rowland deposed that Edwards never advised him of Jones' March 31, 2003, phone call, and that he did not mail a check sooner because he did not have the proper address. On April 3, 2003,

---

[1] (Citations, punctuation and footnotes omitted.) *Chowhan v. Miller*, 283 Ga. App. 749 (642 SE2d 428) (2007).

at 8:43 a.m., Rowland sent via express mail a check for $35,000 to Scarborough. On April 4, 2003, Jones advised Rowland that he was returning the check. In July 2003, Image of Ritz was sold for more than $200,000.

Rowland filed the instant action against Scarborough and Edwards on November 17, 2004. The trial court granted summary judgment to both defendants, without explanation. Rowland appeals the grant of summary judgment to Scarborough only.

1. At the outset, we note that the contract in this case is governed by the Uniform Commercial Code.[2] Moreover, though sales of goods in excess of $500 must be in writing pursuant to OCGA § 11-2-201 (1), an oral agreement is enforceable "[i]f the party against whom enforcement is sought admits in his pleading, testimony, or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted."[3] Here, Scarborough has admitted that a contract was made for the sale of one horse.[4]

2. Rowland contends that the trial court erred in granting summary judgment because he performed within a reasonable time. "Time is not generally of the essence of a contract; but, by express stipulation or reasonable construction, it may become so."[5] Construing the evidence in favor of Rowland, the contract specified that payment was to be made in a "few days." The term "few" is defined in Webster's Third New International Dictionary as "not many," "not many but some," "consisting of or amounting to a small number," and "little."[6] Contrary to Rowland's contention, the time of payment was necessarily of the essence; a few days implies less than one week, not two weeks or thirteen days as here.[7] However, "[i]t is well settled . . . that notwithstanding time is of the essence of a contract, it may be waived, and a subsequent offer to fulfill the contract and urging a compliance with the contract by the party of the other part, instead of treating the contract as at an end, amounts to a waiver."[8] Here, Jones waived his right to insist upon payment within three or four days by

[2] See *Embryo Progeny Assoc. v. Lovana Farms*, 203 Ga. App. 447, 448 (1), n. 1 (416 SE2d 833) (1992) (sales of cattle and other animals are governed by the sales article of the Uniform Commercial Code), citing *Key v. Bagen*, 136 Ga. App. 373 (1) (221 SE2d 234) (1975).

[3] OCGA § 11-2-201 (3) (b).

[4] See, e.g., *Henry v. Blankenship*, 275 Ga. App. 658, 662 (2) (621 SE2d 601) (2005).

[5] OCGA § 13-2-2 (9). See also *Henry Cotton Mills v. Shoenig & Co.*, 33 Ga. App. 467, 469 (1) (127 SE 238) (1925).

[6] Webster's Third New International Dictionary (3d ed. 1976).

[7] See, e.g., *Hawkins v. Studdard*, 136 Ga. 727 (71 SE 1112) (1911) (doctrine of reasonable time inapplicable where contract specifically provided for payment "presently," which the court defined as "immediately").

[8] (Emphasis omitted.) *Turner v. Chambers*, 160 Ga. 93, 98 (127 SE 610) (1925).

telephoning Rowland's agent on March 31, 2003, to ask about the money and by failing to object when Edwards allegedly told him that Rowland would mail a check by April 2, 2003.

Nonetheless, there is a factual dispute as to whether Scarborough was entitled to cancel the contract on April 3, 2003, pursuant to OCGA § 11-2-703. That statute provides, in pertinent part, that "[w]here the buyer . . . fails to make a payment due on or before delivery . . . , the aggrieved seller may: . . . (f) [c]ancel."[9] In his deposition, Jones testified that Edwards told him that Rowland would pay by April 2, 2003; however, Edwards testified that he did not specify a deadline of April 2, 2003. Though it is undisputed that Rowland did not mail the check until April 3, 2003, an issue of fact remains as to whether, on March 31, 2003, Scarborough and Rowland, through his agent Edwards, agreed on a time for performance, i.e., deadline for payment. Accordingly, the trial court's grant of summary judgment to Scarborough must be reversed.

3. Because the grounds for the grant of summary judgment are unclear, the parties also address the issue of damages. In its motion for summary judgment, Scarborough claimed that Rowland's proposed damages are speculative and, therefore, not recoverable. Rowland disputes this.

Scarborough correctly contends that if "[a] plaintiff's claim for damage is remote or speculative, summary judgment for the defendant is appropriate."[10] But we cannot agree with Scarborough that Rowland's evidence of damages is too speculative or remote. OCGA § 11-2-713 (1) provides that "the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price" plus incidental and consequential damages resulting from the seller's breach pursuant to OCGA § 11-2-715. The record shows that Scarborough had an offer of $50,000 for Image of Ritz on the same day Jones agreed to sell the horse to Rowland for $35,000, and that Scarborough eventually sold the horse for an amount in excess of $200,000. Under the circumstances, we cannot say that damages are speculative.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 14, 2007.

*Smith & Harrington, John P. Harrington*, for appellant.

---

[9] OCGA § 11-2-703.

[10] (Citation omitted.) *The Hip Pocket v. Levi Strauss & Co.*, 144 Ga. App. 792, 794 (2) (242 SE2d 305) (1978).

*Page, Scrantom, Sprouse, Tucker & Ford, William L. Tucker, Denney, Pease, Allison & Kirk, Ray L. Allison,* for appellee.