A06A0456. KAESEMEYER v. ANGIOGENIX, INC. et al.
(629 SE2d 22)

BLACKBURN, Presiding Judge.

Wayne H. Kaesemeyer sued Angiogenix, Inc. and NitrOSystems, Inc. (collectively "appellees") for the alleged breach of a promissory note which he entered into with NitrOSystems and which was subsequently assigned to Angiogenix as part of an asset purchase agreement between the two companies. Appellees argued that Kaesemeyer had no standing to sue under the asset purchase agreement and that the condition precedent triggering payment of the debt had not occurred. The trial court agreed and entered summary judgment in favor of appellees, which Kaesemeyer now appeals. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c); *Britt v. Kelly & Picerne, Inc.*[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[2]

---

[1] *Britt v. Kelly & Picerne, Inc.,* 258 Ga. App. 843 (575 SE2d 732) (2002).

[2] *Matjoulis v. Integon Gen. Ins. Corp.,* 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So construed, the evidence shows that on January 20, 1998, NitrOSystems, a corporation that develops new pharmaceutical products, executed a conditional promissory note to pay Kaesemeyer, a research scientist and principal of NitrOSystems, for his work in developing pharmaceutical patents. According to the note, NitrOSystems agreed to pay $225,000 to Kaesemeyer in "[a] single installment which shall become due and payable one year from the date of approval by the U. S. Food and Drug Administration of a pharmaceutical compound which consists of a combination of L-Arginine and Nitroglycerin and used for the treatment of angina and is the subject of licensing agreement of even date." All parties agree that as of the date this lawsuit was filed, the condition precedent described in the note had yet to occur.

In 2002, Angiogenix entered into an agreement to purchase certain assets and liabilities from NitrOSystems (the "APA"). The only parties to the APA were Angiogenix, designated as the "Buyer," and NitrOSystems, designated as the "Seller." Included among the "assumed liabilities" of the APA was Kaesemeyer's promissory note, which was described in Schedule D as follows:

> Promissory Note from NitrOSystems, Inc. to Wayne H. Kaesemeyer dated January 20, 1998 in the original principal amount of $225,000 with interest accruing at the rate of 7% per annum. [T]his note is due and payable one-year after the date of FDA approval of any of Seller products which are or would be covered by any of the Patents included as Initial Assets or Subsequent Assets.

In addition, Section 10.2 of the APA provided "[t]his Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and no other person shall have any right, benefit or obligation under this Agreement as a third party beneficiary or otherwise." Finally, the APA also contained a merger clause, which read in part:

> This Agreement, the Ancillary Agreements, together with all exhibits and schedules hereto and thereto (including the Disclosure Schedule), constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. Kaesemeyer was not a party to the APA.

In 2003, Merck & Company, a wholly independent pharmaceutical company, obtained FDA approval to add new labeling information to one of its own pre-existing products, Zocor. Zocor, containing Simvastatin as its active ingredient, had been marketed by Merck since 1991 as medication used to lower cholesterol and to prevent cardiovascular disease. Although Kaesemeyer had used Simvastatin for research and development of patents in his work for NitrOSystems, neither Angiogenix nor NitrOSystems had ever sought FDA approval for or marketed any Simvastatin product, and neither company had ever entered into any agreements with Merck concerning Zocor. With the new FDA approval, Merck was allowed to add new labeling to Zocor that would market the medication as a means to also treat existing cardiovascular disease.

Believing this FDA approval to have triggered the condition precedent to payment on the promissory note (as described in the APA), Kaesemeyer sought payment from Angiogenix. After Angiogenix refused to pay Kaesemeyer on the ground that the condition precedent had not occurred, Kaesemeyer sued both Angiogenix and NitrOSystems for breach of contract. Kaesemeyer admitted that the condition precedent as described in the original promissory note had not occurred. He argued, however, that the promissory note had been modified by Schedule D of the APA, and that the new condition precedent was triggered when the FDA approved Merck's new labeling for Zocor, which allegedly was a new use for Simvastatin covered by one of his patents. The trial court granted summary judgment to both Angiogenix and NitrOSystems, ruling that Kaesemeyer had no standing to sue for an alleged breach of the APA because he was neither a party to nor a third-party beneficiary of that agreement, and that even if he did have standing, there was no breach of contract because the condition precedent to Angiogenix's obligation to pay had not occurred. This appeal followed.

1. Kaesemeyer contends that the trial court erred in ruling that he had no standing to sue under the APA and, more specifically, that he was not a third-party beneficiary according to the language of that agreement, as well as the intentions of the parties. We find this contention to be without merit.

Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo. *Deep Six, Inc. v. Abernathy.*[3] "First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next,

---

[3] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity." *Woody's Steaks, LLC v. Pastoria.*[4] It is axiomatic that a person who is not a party to a contract is not bound by its terms. *Martin v. Pierce.*[5] In addition, "[t]he doctrine of privity of contract requires that only parties to a contract may bring suit to enforce it." *Scott v. Cushman & Wakefield of Ga.*[6]

Kaesemeyer acknowledges that he was not a party to the APA but asserts standing as a third-party beneficiary pursuant to OCGA § 9-2-20 (b), which provides "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." A third-party beneficiary contract is "one in which the promisor engages to the promisee to render some performance to a third person." (Punctuation omitted.) *Starrett v. Commercial Bank of Ga.*[7] "A third party has standing to enforce that type of contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." (Punctuation omitted.) *Northen v. Tobin.*[8] More specifically, "[t]he rights of a third person to sue on a contract made for his benefit depend on the terms of the agreement and are no greater than those granted by the contract as intended by the parties thereto. To recover the beneficiary must bring himself within its terms and construction of the contract is involved." (Punctuation omitted.) *Walls, Inc. v. Atlantic Realty Co.*[9]

Although Kaesemeyer and the promissory note obligating NitrOSystems to pay him pursuant to a condition precedent are listed as "Assumed Liabilities" in the APA, a review of the entire agreement indicates that it was not intended for Kaesemeyer's benefit. See *Walls, Inc.*, supra. Indeed, Section 10.2 of the APA provides in part that "no other person shall have any right, benefit or obligation under this Agreement as a third party beneficiary or otherwise." Given this explicit language, the intent of the parties that no others benefit from the APA could scarcely have been more clearly and unambiguously expressed. See id. Furthermore, in light of the agreement's clear language and merger clause, the parol evidence allegedly supporting Kaesemeyer's claim that he had standing was properly deemed

---

[4] *Woody's Steaks, LLC v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003).

[5] *Martin v. Pierce*, 140 Ga. App. 897, 899 (1) (232 SE2d 170) (1977).

[6] *Scott v. Cushman & Wakefield of Ga.*, 249 Ga. App. 264, 265 (547 SE2d 794) (2001).

[7] *Starrett v. Commercial Bank of Ga.*, 226 Ga. App. 598, 599 (1) (486 SE2d 923) (1997).

[8] *Northen v. Tobin*, 262 Ga. App. 339, 344 (2) (b) (585 SE2d 681) (2003).

[9] *Walls, Inc. v. Atlantic Realty Co.*, 186 Ga. App. 389, 392 (1) (367 SE2d 278) (1988).

inadmissible. See *Forest Commodity Corp. v. Lone Star Indus.*[10] Accordingly, the trial court did not err in ruling that Kaesemeyer had no standing to bring an action pursuant to the APA as either a party or a third-party beneficiary.

2. Moreover, even assuming, arguendo, that Kaesemeyer did have standing as a third-party beneficiary pursuant to the APA, and that the APA modified the original promissory note, we disagree with Kaesemeyer's contention that the condition precedent triggering Angiogenix's obligation to pay on the promissory note has occurred. "A condition precedent is one that must be performed before a contract becomes absolute and obligatory upon the other party." *Hall v. Ross.*[11] According to Schedule D of the APA, the promissory note is "due and payable one-year after the date of FDA approval of any of Seller products which are or would be covered by any of the Patents included as Initial Assets or Subsequent Assets." Importantly, the agreement explicitly designates NitrOSystems as the "Seller." Thus, under the clear and unambiguous language of the APA, payment on the promissory note is triggered by FDA approval of a NitrOSystems product. See *Woody's Steaks, LLC*, supra. Given the fact that Kaesemeyer concedes that the FDA has not specifically approved any NitrOSystems pharmaceutical product, the condition precedent required to trigger either Angiogenix's or NitrOSystems's obligation to pay on the promissory note has not occurred.

Kaesemeyer's argument that FDA approval of Merck's new labeling of one of its own products somehow implicates an approval of one of Kaesemeyer's patents and, thus, satisfies the condition precedent for payment on the note, requires this Court to ignore the APA's clear and explicit designation of NitrOSystems as the "Seller" of the products requiring approval. In addition, Kaesemeyer's only support for such a tortured interpretation of the APA is parol evidence, which the trial court properly deemed inadmissible. See *Forest Commodity Corp.*, supra. Accordingly, we find that the trial court did not err in ruling that, even assuming Kaesemeyer had standing under the APA, the condition precedent necessary to trigger appellees' obligation to pay on the promissory note has not occurred.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 7, 2006 —
RECONSIDERATION DENIED MARCH 24, 2006 — 

*Jay M. Sawilowsky*, for appellant.

---

[10] *Forest Commodity Corp. v. Lone Star Indus.*, 255 Ga. App. 244, 248 (3) (564 SE2d 755) (2002).

[11] *Hall v. Ross*, 273 Ga. App. 811, 813 (616 SE2d 145) (2005).

*Hull, Towill, Norman, Barrett & Salley, William J. Keogh III*, for appellees.